CRIMINAL COMPLAINT

| United States District Court | DISTRICT of ARIZONA |
|---|---|

| **United States of America**<br>**v.**<br>**Santiago Valencia, Jr.**<br>DOB: 1989<br>United States Citizen | DOCKET NO. |
|---|---|
| | MAGISTRATE'S CASE NO.<br><br>24-02077MJ |

| Complaint for violation of Title 18, United States Code, Sections 1112 and 1153. |
|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about June 15 and into June 16, 2024, in the District of Arizona, within the confines of the Tohono O'odham Indian Nation, Indian Country, the defendant, **Santiago Valencia, Jr.**, an Indian, upon a sudden quarrel and heat of passion did knowingly kill R.V., by repeatedly slamming the back of R.V.'s head into a concrete windowsill, in violation of Title 18, United States Code, Sections 1112 and 1153.

BASIS OF COMPLAINT'S CHARGE AGAINST THE ACCUSED:

On June 15, 2024, the Pascua Yaqui Police Department ("PYPD") and Pascua Yaqui Fire Department ("PYFD") responded to 7634 South Camino De Oeste, Tucson, Arizona, 85757, in response to a 911 call reporting an unconscious male who was observed bleeding from his head. The caller indicated that an intoxicated male and female were on scene.

The unconscious male victim, identified as R.V., was found unresponsive with blood coming from his mouth and head. The victim was subsequently transported by ambulance to UMC Banner Main for treatment. Upon arrival at the hospital, hospital staff determined that the victim's blood pressure was low. Hospital staff reported that he was possibly brain dead. The victim later succumbed to his injuries at 4:03 a.m. on June 16, 2024.

Upon PYPD's arrival at the scene, officers met with two witnesses, Santiago Garcia Valencia, Sr. ("Santiago, Sr.") and Melinda Valencia ("Melinda"). The officers determined that the two had witnessed a fight between the victim and **Santiago "Luis" Valencia, Jr. ("Valencia")**, resulting in the victim's injuries. **Valencia** had fled on foot by the time Melinda called 911.

**(BASIS OF COMPLAINT CONTINUED ON REVERSE.)**

MATERIAL WITNESSES IN RELATION TO THE CHARGE: N/A

| Detention Requested<br>  Being duly sworn, I declare that the foregoing is<br>  true and correct to the best of my knowledge.<br><br>AUTHORIZED BY: AUSA *N. Walters*   [signature] Digitally signed by NATHANIEL WALTERS Date: 2024.06.17 10:37:18 -07'00' | SIGNATURE OF COMPLAINANT<br>NICOLE WOODS Digitally signed by NICOLE WOODS Date: 2024.06.17 10:44:31 -07'00' |
|---|---|
| | OFFICIAL TITLE<br>FBI Special Agent Nicole Woods |

| Sworn by telephone ___. |
|---|

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>[signature] | DATE<br>June 17, 2024 |
|---|---|

1)    See Federal Rules of Criminal Procedure Rules 3, 4.1, and 54.

24-02077MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED)**

PYPD Detective David Lopez and Special Agent ("SA") Nicole Woods responded to 7634 South Camino De Oeste at 9:45 p.m. on June 15, 2024. It was reported that officers were unable to interview Santiago, Sr. because he was intoxicated and reportedly asleep.

Detective Lopez and SA Woods interviewed Melinda, who stated she had arrived at her father's, Santiago Sr.'s, house approximately 30 minutes before calling 911. When she arrived, **Valencia**, Santiago Sr., and the victim were drinking an 18-pack of Bud Light beer cans in the backyard, but the 18-pack was mostly empty. Melinda, the victim's sister, stated she brought a six-pack of Budweiser and a bottle of Maddog liquor. Melinda recalled that **Valencia** acted jealous because she was dancing during the conversation, and **Valencia** became disrespectful toward his father, Santiago, Sr. As a result, the victim R.V. told **Valencia** to stop disrespecting his father. This caused a verbal altercation between **Valencia** and the victim, leading to Santiago, Sr. trying to stop them by telling the victim to leave **Valencia** alone as was "**Valencia** escalated." The verbal altercation between **Valencia** and the victim continued and then became physical. According to witnesses, **Valencia** started the physical fight. Melinda believes **Valencia** and the victim fought for about a minute before **Valencia** got ahold of the victim's shirt and neck and repeatedly slammed the victim's head into the concrete windowsill of the exterior of the home. The victim fell due to his injuries and struggled to get back up. Melinda attempted to help the victim as Santiago, Sr. told her to call 911. At some point during the physical altercation, Santiago, Sr. had fallen once due to having a bad knee and was able to recover himself before being pushed back down by **Valencia**. Melinda attempted to help the victim and Santiago, Sr., while calling 911. Melinda added that after the second time the victim fell to the ground, **Valencia** appeared to be panicked.

Melinda told **Valencia** to get out of there, and **Valencia** fled on foot from the scene through a back alley. Melinda described **Valencia** as wearing black Levi 501 pants with tan stitching, a white shirt, tan Grizzly boots, and a tan bandana. Melinda told SA Woods and Detective Lopez that **Valencia** had a history of violence and a bad temper, and that **Valencia** had hit her and Santiago, Sr. in the past. Melinda added that the victim had a known prior head injury from a previous aneurysm. Melinda stated that everyone in the family knew of the victim's head injury and how he could not be hit in the head. Melinda also noted that **Valencia** knew of the victim's prior head injury.

Detective Ralls contacted the owner of 7364 South Camino De Oeste, Aurora Valencia, and obtained verbal consent to search the home's exterior for evidence. Detective Lopez and SA Woods subsequently searched the home's exterior where the fight occurred. Detective Lopez and SA Woods observed a red/brown substance on the N/W exterior window of the house, which was presumed to be blood. Detective Lopez and SA Woods located multiple empty cans of Bud Light, an unopened bottle of Maddog liquor over ice, and a few open Budweiser cans near a backyard seating area. Subsequently, the scene was photographed, and five (5) swabs were taken of the suspected red/brown substance for evidence.

On June 16, 2024, Detective Lopez and SA Woods interviewed Santiago, Sr. who confirmed that he, **Valencia**, and the victim had been drinking since approximately 3:00 p.m. on the day of the incident. Sometime after sunset and Melinda's arrival, a verbal argument broke out between the victim and **Valencia** after the victim told **Valencia** to stop disrespecting Santiago, Sr. Santiago, Sr. tried to deescalate the situation, but the fight turned physical, with **Valencia** throwing the first punch. Santiago, Sr. tried to get up to stop the fight but fell due to having a bad knee. He recalled **Valencia** and the victim fist-fighting, that **Valencia** pushed the victim, and the victim fell. Santiago, Sr. stated the victim got up but fell again. Santiago, Sr. stated he then observed the victim having blood in his mouth on the ground. Santiago, Sr. noted the

24-02077MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED)**

victim was trying to talk, but it was not understandable. Santiago, Sr. told Melinda to call 911, and victim was trying to talk, but it was not understandable. Santiago, Sr. told Melinda to call 911, and **Valencia** fled on foot. Santiago, Sr. knew about the victim's prior head injury and added that **Valencia** knew of it as well.

Officers subsequently located **Valencia** at a residence in Tucson, Arizona and arrested. This incident occurred within the exterior boundaries of the Pascua Yaqui Indian Reservation. The victim and **Valencia** are enrolled members of the Pascua Yaqui Tribe, which is a federally recognized tribe.